# United States Court of Appeals for the Federal Circuit

---

**CANADIAN SOLAR, INC., CANADIAN SOLAR INTERNATIONAL LIMITED, CANADIAN SOLAR MANUFACTURING (LUOYANG), INC., CANADIAN SOLAR MANUFACTURING (CHANGSHU), INC., CSI CELLS CO., LTD., CSI SOLAR POWER (CHINA) INC., CSI SOLARTRONICS (CHANGSHU) CO., LTD., CSI SOLAR TECHNOLOGIES INC., CSI SOLAR MANUFACTURE INC., CSI NEW ENERGY HOLDING CO., LTD., CSI-GCL SOLAR MANUFACTURING (YANCHENG) CO., LTD., CHANGSHU TEGU NEW MATERIALS TECHNOLOGY CO., LTD., CHANGSHU TLIAN CO., LTD., SUZHOU SANYSOLAR MATERIALS TECHNOLOGY CO., LTD., CANADIAN SOLAR (USA), INC.,**
*Plaintiffs-Appellants*

**SUMEC HARDWARE & TOOLS CO., LTD., CHANGZHOU TRINA SOLAR ENERGY CO., LTD., TRINA SOLAR (CHANGZHOU) SCIENCE & TECHNOLOGY CO., LTD., YANCHENG TRINA SOLAR ENERGY TECHNOLOGY CO., LTD., CHANGZHOU TRINA SOLAR YABANG ENERGY CO., LTD., TURPAN TRINA SOLAR ENERGY CO., LTD., HUBEI TRINA SOLAR ENERGY CO., LTD., CHANGZHOU TRINA PV RIBBON MATERIALS CO., LTD.,**
*Plaintiffs*

v.

**UNITED STATES,**

*Defendant-Appellee*

**SOLARWORLD AMERICAS, INC.,**
*Defendant*

_____

2021-1434

_____

Appeal from the United States Court of International Trade in Nos. 1:18-cv-00184-JAR, 1:18-cv-00185-JAR, 1:18-cv-00186-JAR, 1:18-cv-00187-JAR, Senior Judge Jane A. Restani.

_____

Decided:  January 28, 2022

_____

SARAH WYSS, Mowry & Grimson, PLLC, Washington, DC, argued for plaintiffs-appellants.  Also represented by BRYAN CENKO, JILL CRAMER, JEFFREY S. GRIMSON, WENHUI JI, KRISTIN HEIM MOWRY.

JUSTIN REINHART MILLER, International Trade Field Office, Civil Division, United States Department of Justice, New York, NY, argued for defendant-appellee.  Also represented by BRIAN M. BOYNTON, JEANNE DAVIDSON, TARA K. HOGAN; PAUL KEITH, Office of the Chief Counsel for Trade Enforcement & Compliance, United States Department of Commerce, Washington, DC.

_____

Before MOORE, *Chief Judge*, CLEVENGER and CHEN, *Circuit Judges*.

CHEN, *Circuit Judge*.

Appellants Canadian Solar, Inc. *et al.*[1] (collectively, Canadian Solar) are producers and exporters of certain crystalline silicon photovoltaic cells. These photovoltaic cells were imported into the United States from the People's Republic of China, and the United States Department of Commerce (Commerce), after an investigation, issued an order imposing a duty to counteract subsidies Canadian Solar received from the government of China.

During its fourth administrative review of that countervailing duty order, Commerce determined on remand that Canadian Solar received regionally specific electricity subsidies subject to countervailing duties under 19 U.S.C. § 1677(5A)(D)(iv). Final Results of Redetermination Pursuant to Court Remand at 14–19, *Canadian Solar Inc. v. United States*, No. 18-00184 (Ct. Int'l Trade June 26, 2020), ECF No. 95-1 (*Remand Redetermination*). To reach this conclusion, Commerce identified electricity price variation across the different provinces and applied adverse facts available—due to the central government of China's failure to cooperate in Commerce's investigation—to conclude that the central government sets variable electricity pricing that is region-specific for development purposes. *See id.* at 19. The Court of International Trade (CIT) sustained Commerce's Remand Redetermination. *Canadian Solar*

---

[1] In addition to Canadian Solar, Inc., Appellants include Canadian Solar International Ltd., Canadian Solar Manufacturing (Luoyang), Inc., Canadian Solar Manufacturing (Changshu), Inc., CSI Cells Co., Ltd., CSI Solar Power (China) Inc., CSI Solartronics (Changshu) Co., Ltd., CSI Solar Technologies Inc., CSI Solar Manufacture Inc., CSI New Energy Holding Co., Ltd., CSI-GCL Solar Manufacturing (Yancheng) Co., Ltd., Changshu Tegu New Materials Technology Co., Ltd., Changshu Tlian Co., Ltd., Suzhou Sanysolar Materials Technology Co., Ltd., and Canadian Solar (USA), Inc.

*Inc. v. United States*, No. 18-00184, slip op. 20-149, 2020 WL 6129754 (Ct. Int'l Trade Oct. 19, 2020) (*Canadian Solar II*).  For the reasons stated herein, we affirm.

## BACKGROUND

### A

Commerce is required to impose a countervailing duty on imported merchandise when it "determines that the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy."  19 U.S.C. § 1671(a)(1).  A subsidy is countervailable when it is "specific."  *Id.* § 1677(5)(A).  One type of specific subsidy is a subsidy "limited to an enterprise or industry located within a designated geographical region within the jurisdiction of the authority providing the subsidy."  *Id.* § 1677(5A)(D)(iv).  Such a subsidy is referred to as a regionally specific subsidy.

If, during investigation or review of a countervailing duty order, Commerce determines that (a) "necessary information is not available on the record" or (b) "an interested party or any other person . . . withholds information that has been requested by [Commerce]," "fails to provide such information by the deadlines . . . or in the form and manner requested," "significantly impedes a proceeding," or "provides such information but the information cannot be verified," Commerce must use "facts otherwise available."  19 U.S.C. § 1677e(a); *see also Changzhou Trina Solar Energy Co. v. United States*, 975 F.3d 1318, 1327 (Fed. Cir. 2020).  If Commerce further "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information," then Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  19 U.S.C. § 1677e(b).  To reach an adverse inference, Commerce can rely on information from the petition, a final determination in the investigation, prior

administrative reviews, or "any other information placed on the record." 19 U.S.C. § 1677e(b)(2); *see also* 19 C.F.R. § 351.308(c); *Gallant Ocean (Thai.) Co. v. United States*, 602 F.3d 1319, 1321 (Fed. Cir. 2010).

B

On February 13, 2017, Commerce initiated the fourth administrative review of the countervailing duty order at issue. *See* Initiation of Antidumping and Countervailing Duty Admin. Revs., 82 Fed. Reg. 10,457, 10,457, 10,462 (Dep't Commerce Feb. 13, 2017). The order imposed duties on crystalline silicon photovoltaic cells manufactured in China and imported into the United States. As part of its review, Commerce initiated an investigation and selected Canadian Solar as one of the mandatory respondents. Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Preliminary Results of Countervailing Duty Admin. Rev., and Rescission of Rev., in Part; 2015, 83 Fed. Reg. 1235, 1236 (Dep't Commerce Jan. 10, 2018), and accompanying Decision Memorandum for Preliminary Results at 2–3 (Dep't Commerce Jan. 2, 2018) (*Preliminary Memo*). Of relevance to this case, Commerce sought to determine whether Canadian Solar benefitted from receiving electricity for less than adequate remuneration (LTAR). *Preliminary Memo*, at 25–26.

To understand whether Canadian Solar received electricity subsidies, Commerce sent questionnaires to the government of China. Among other things, Commerce requested provincial price proposals, descriptions of how the National Development and Reform Commission (NDRC) is involved in electricity price-setting, and an explanation of how electricity pricing is responsive to market variables. J.A. 157–65. The parties do not dispute that the government of China declined to provide complete responses to Commerce's inquiries. Because, in Commerce's view, the government of China "failed to cooperate by not acting to the best of its ability to comply" with Commerce's

request and because the requested information was "key to [Commerce's] understanding of the [government of China's] role in establishing electricity prices at the local provincial level," Commerce applied adverse facts available to conclude that Canadian Solar received a countervailable subsidy through below-market electricity prices. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Final Results of Countervailing Duty Admin. Rev.; 2015*, 83 Fed. Reg. 34,828, 34,829 (Dep't Commerce July 23, 2018) (*Final Results*), and accompanying Decision Memorandum for the Final Results at 14–15 (Dep't Commerce July 12, 2018) (*Final Memo*).[2] Commerce also applied adverse facts available to calculate the countervailing duty rate.[3] *Final Memo*, at 33–34.

Canadian Solar subsequently filed suit in the CIT challenging various components of the Final Results, including Commerce's finding that Canadian Solar received a

---

[2]    Commerce later amended its Final Results to adjust the overall countervailing duty rate to account for an error unrelated to the electricity subsidy. *Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From China: Amended Final Results of Countervailing Duty Admin. Rev.; 2015*, 83 Fed. Reg. 54,566, 54,567 (Dep't Commerce Oct. 30, 2018).

[3]    On remand, Commerce assessed Canadian Solar a total countervailing duty rate of 5.02 percent. *Remand Redetermination*, at 59. This accounts for subsidies received for solar grade polysilicon, solar glass, electricity, and land, as well as export credits, development program benefits, preferential lending, and tax benefits. *Final Memo*, at 8–9; *Remand Redetermination*, at 59. The countervailing duty rate for subsidized electricity comprised 0.53 percent. *Remand Redetermination*, at 59. Only the electricity subsidy is on appeal and Canadian Solar does not challenge the rate calculation.

countervailable electricity subsidy. *Canadian Solar Inc. v. United States*, No. 18-00184, slip op. 20-23, 2020 WL 898557, at *4 (Ct. Int'l Trade Feb. 25, 2020). Commerce requested a voluntary remand and the CIT granted the request. *Id.*

On remand, Commerce provided a revised determination that Canadian Solar received a regionally specific subsidy under 19 U.S.C. § 1677(5A)(D)(iv). *Remand Redetermination*, at 14. As support for this finding, Commerce noted that the parties did not dispute "that electricity prices vary from province to province in China." *Id.* Because the government of China declined to provide certain "key information" as to the electricity price variation across the provinces, Commerce was unable to "confirm that market and commercial principles explain the variation in electricity prices on the record." *Id.* at 15–16.

First, the government of China refused to provide "provincial price proposals for each of the relevant provinces," which would have helped Commerce determine why the electricity prices varied by province, including by identifying "market- or cost-based reasons underlying the variation." *Id.* at 15. Second, the government of China's response lacked "a detailed description of the cost elements and price adjustments that were discussed between the provinces and the NDRC," which would have helped Commerce ascertain whether the NDRC was involved in price setting as well as why prices varied by province. *Id.* at 15–16. Finally, the government of China's response was devoid of any "province-specific explanations" for price variation, such as how costs inform provincial electricity prices. *Id.* at 16. This would have also helped Commerce determine "whether there is a market- or cost-based explanation for variation among provinces." *Id.*

After finding that the government of China failed to cooperate to the best of its ability, Commerce applied adverse facts available to conclude that "the provision of electricity

is a countervailable subsidy program whereby the central Chinese government, through the NDRC in Beijing, sets different prices in different regions under its authority (i.e., the provinces) without any commercial or market considerations, but instead for development purposes." *Id.* at 19. Commerce then used the highest electricity prices from the province-by-province price list as its benchmarks for calculating Canadian Solar's duty rate. *Id.*

Following the Remand Redetermination, Canadian Solar filed a second suit before the CIT challenging Commerce's findings that Canadian Solar received countervailable electricity subsidies, as well as several other findings. *Canadian Solar II*, at *1. The CIT sustained Commerce's determination. *Id.* at *7.

Canadian Solar appeals, arguing that Commerce's application of adverse facts available to determine that the electricity program was a regionally specific subsidy was not supported by substantial evidence because Commerce allegedly ignored the provincial price schedules and failed to identify a single geographic region receiving subsidies. *See* Appellants' Br. 15–16.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review Commerce's determinations under the same standard of review as the CIT and uphold those determinations if they are supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i); *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (citing *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1371 (Fed. Cir. 2015)). "Substantial evidence is 'more than a mere scintilla'; rather it is such 'evidence that a reasonable mind might accept as adequate to support a conclusion.'" *Changzhou Trina*, 975 F.3d at 1326 (quoting *Downhole Pipe*,

776 F.3d at 1374).  When assessing whether Commerce's factual findings are supported by substantial evidence, "[w]e look to 'the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.'"  *SolarWorld*, 910 F.3d at 1222 (quoting *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1340 (Fed. Cir. 2011)).  Although we review the CIT's decision de novo, "we give great weight" to the CIT's "informed opinion," which "is nearly always the starting point of our analysis."  *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016) (quoting *Ningbo Dafa Chem. Fiber Co. v. United States*, 580 F.3d 1247, 1253 (Fed. Cir. 2009)).

The record here supports Commerce's conclusions.  In its Remand Redetermination, Commerce sufficiently and reasonably explained that it lacked key information because the government of China failed to cooperate by not acting to the best of its ability to comply with requests for information.  As a result, Commerce was forced to fill informational gaps and properly relied on adverse inferences to find that Canadian Solar received a regionally specific electricity subsidy that must be countervailed.

## A.  Electricity Subsidy

Commerce is entitled to apply adverse facts available where, as here, an interested party declines to provide requested information and fails to cooperate with an investigation.  *See, e.g.*, 19 U.S.C. § 1677e(b); *Changzhou Trina*, 975 F.3d at 1327.  This includes "when a government fails to respond to Commerce's questions."  *Fine Furniture (Shanghai) Ltd. v. United States*, 748 F.3d 1365, 1373 (Fed. Cir. 2014).  This court has specifically upheld the application of adverse facts available where "the government of China refused to provide information as to how the electricity process and costs varied among the various provinces that supplied electricity to industries within their areas" and "did not provide the data sufficient to establish the

benchmark price for electricity." *Id.* at 1372.  Commerce identified comparable informational gaps in this case.  *See Remand Redetermination*, at 14–19 ("[T]he [government of China] refused to provide key information that would allow Commerce to confirm its claims . . . .  Without such information, Commerce cannot confirm that market and commercial principles explain the variation in electricity prices . . . .").

Canadian Solar argues that Commerce improperly ignored the provincial price schedules.  Appellants' Br. 22.  In its view, these price schedules "demonstrate that no region in China received subsidized electricity prices," and therefore Commerce did not need to fill any informational gaps with adverse inferences.  *Id.*; *see also id.* at 31 ("[T]he price schedules clearly demonstrate on their face that no geographic region received an alleged electricity subsidy . . . .").  While Canadian Solar is correct that Commerce may not rely on adverse facts available when the record is not missing information or otherwise deficient, *Zhejiang DunAn*, 652 F.3d at 1348, in this case Commerce expressly considered the price schedules and reached the opposite conclusion, *Remand Redetermination*, at 14.  Commerce relied on adverse inferences to fill two critical informational gaps raised (not resolved) by the provincial price schedules:  "why prices vary from province to province and who makes the decision—ultimately—to set or allow distinct prices in each province."  *Id.*

Commerce could not determine why prices vary because the government of China failed "to demonstrate that such variances are in accordance with market principles or cost differences."  *Id.* at 15.  The government of China asserted that "[e]lectricity prices in China are based on market principles" but "refused to provide key information that would allow Commerce to confirm its claims."  *Id.* at 15.  As described above, Commerce requested and the government of China declined to provide provincial price proposals, a description of cost and price discussions between the

provinces and the NDRC, and province-specific cost and price considerations. *Id.* at 15–16. Without this specifically requested information, Commerce could not determine the root cause for the price disparities. *Id.* at 15–16. Commerce therefore inferred that the government of China provided electricity subsidies "for development purposes" by setting lower electricity prices for enterprises located in provinces such as the ones where Canadian Solar operates. *Id.* at 15, 19.

To determine the entity responsible for setting the electricity subsidies, Commerce relied on documents indicating that the NDRC set electricity prices at the national level. These documents include NDRC Notices indicating that, at least in years prior, the NDRC was entitled to, among other things, implement coal and electricity price bidding systems, adopt price intervention measures, adjust provincial price levels, and reduce electricity prices for industrial and commercial users. *Id.* at 17–18. Commerce credited this evidence over the government of China's uncorroborated narrative responses claiming that the provinces set their own prices. *Id.* at 16–19; *id.* at 17 ("Based on our examination of the additional documentation, as well as the [government of China] questionnaire response, we concluded the following demonstrated that the NDRC was still ultimately in control of the price setting system and that the 2015 changes had not affected how the system operated in practice . . . ."). In so finding, Commerce noted that the purported delegation of price setting authority to the provinces marked an unsubstantiated shift from the government of China's position during all three prior administrative reviews of the same countervailing duty order. *Id.* at 16.

This case is distinguishable from *Diamond Sawblades Manufacturers' Coalition v. United States*, 986 F.3d 1351 (Fed. Cir. 2021). In *Diamond Sawblades*, we held that Commerce improperly disregarded all product origin information where "Commerce ha[d] not satisfactorily

explained why substantial evidence supports its determination of unreliability." *Id.* at 1366. While Canadian Solar considers the provincial price schedules to be similarly disregarded evidence of provincial price-setting, in this case Commerce expressly considered the record evidence, including the provincial price schedules and NDRC Notices. Based on the record, Commerce reasonably determined it required additional information regarding the basis for and source of the price variation in order to assess whether Canadian Solar had received an electricity subsidy.

At most, Commerce and Canadian Solar reached inconsistent conclusions based on the same evidence. This does not, however, render Commerce's findings unsupported by substantial evidence. *Deacero S.A.P.I. de C.V. v. United States*, 996 F.3d 1283, 1297 (Fed. Cir. 2021) ("Commerce's finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." (quoting *SolarWorld*, 910 F.3d at 1222)).

We therefore agree with the CIT that Commerce's adverse inference that the government of China subsidized electricity is supported by substantial evidence.

## B.   Regional Specificity

Canadian Solar also argues that instead of identifying a particular subsidized region, as it believes is required by statute, Commerce improperly "ascrib[ed] the supposedly regional subsidy program to every single region and province across China." Appellants' Br. 42–43. This, Canadian Solar argues, "is the antithesis of a reasonable specificity determination under 19 U.S.C. § 1677(5A)(D)(iv)," *id.* at 49, and, as a result, Commerce's regional specificity finding cannot be supported by substantial evidence, *id.* at 52. We disagree.

Section 1677(5A)(D)(iv) provides that a subsidy is regionally specific where it is "limited to an enterprise or industry located within a designated geographical region

within the jurisdiction of the authority providing the subsidy." We agree with the CIT that, where documents support the inference that the central government of China was involved in provincial electricity pricing that results in regional price variability, substantial evidence supports Commerce's finding that there is a countervailable regionally specific subsidy. *Canadian Solar II*, at \*3; *see also Changzhou Trina Solar Energy Co. v. United States*, 466 F. Supp. 3d 1287, 1302 (Ct. Int'l Trade 2020) (holding that "Commerce's determination that the subsidy is regionally specific" was sufficiently supported where "Commerce noted two factual bases for a determination of specificity: (1) unexplained regional price variability and (2) central government action via the NDRC").

The CIT's decision in *Royal Thai Government v. United States* is instructive. 441 F. Supp. 2d 1350 (Ct. Int'l Trade 2006). In *Royal Thai*, the CIT found that Commerce "reasonably determined" that an electricity subsidy provided by the Royal Thai Government "satisfied the requirements of regional specificity" where "[a]ccess to this relatively cheaper electricity was expressly contingent on only one factor: a company's regional location within Thailand." *Id.* at 1358. Accepting Commerce's adverse inferences in the present case, the electricity subsidies provided by the government of China also depend only on a company's regional location since the price of electricity varies by province. *Remand Redetermination*, at 19, 40.

This holds true even if, as Canadian Solar contends, electricity subsidies are available across different provinces. Appellants' Br. 49. On this ground, we agree with the CIT's reasoning in *Samsung Electronics Co. v. United States*, 973 F. Supp. 2d 1321 (Ct. Int'l Trade 2014). There, the CIT rejected an argument that "regional specificity should be limited to 'administrative jurisdictions such as provinces or states,'" *id.* at 1328 (citation omitted), and upheld Commerce's finding that a tax credit available anywhere in South Korea "outside the Seoul Metropolitan

Area" was geographically specific, *id.* at 1328–29. In other words, even if a particular electricity subsidy is provided to more than one province, so long as it is provided to less than all regions or varies by region, that subsidy can be fairly regarded as regionally specific under the statute.

Canadian Solar also argues that the benchmark calculations render Commerce's regional specificity findings unreasonable. Appellants' Br. 45. To calculate the countervailing duty rate, Commerce compared each of Canadian Solar's electricity rates to the highest provincial rate for the relevant category. *Remand Redetermination*, at 19 ("The amount of the subsidy we infer to be the difference between what the respondent is paying and the highest tariffs set for any province."). As Commerce explained, this issue arises only because the government of China declined to provide information that would have permitted Commerce to identify an unsubsidized province or unsubsidized rates. *Id.* at 40–41. In the absence of that information, it was reasonable for Commerce to infer that the highest rate in each category was unsubsidized.

Canadian Solar argues that this approach "signifies that users in *all* regions are subsidized" instead of designating a single subsidized region. Appellants' Br. 49. But Commerce's rate calculation does not undermine the separate conclusion that the electricity subsidies are geographically specific because the rates depend on the province in which an enterprise is located. *Remand Redetermination*, at 19.

Accordingly, we agree with the CIT that Commerce's regional specificity findings are supported by substantial evidence.

## CONCLUSION

We have considered Appellants' remaining arguments and do not find them persuasive. For the foregoing

reasons, we affirm the Court of International Trade's judgment.

**AFFIRMED**