NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHELTER FOREST INTERNATIONAL ACQUISITION, INC., XUZHOU SHELTER IMPORT & EXPORT CO., LTD., SHANDONG SHELTER FOREST PRODUCTS CO., LTD., IKEA SUPPLY AG, TARACA PACIFIC, INC., PATRIOT TIMBER PRODUCTS, INC., SHANGHAI FUTUWOOD TRADING CO., LTD., LINYI GLARY PLYWOOD CO., LTD., FAR EAST AMERICAN, INC.,**
*Plaintiffs-Appellees*

**LIBERTY WOODS INTERNATIONAL, INC., MJB WOOD GROUP, INC., AKA MJB WOOD GROUP, LLC,**
*Plaintiffs*

**v.**

**UNITED STATES,**
*Defendant*

**COALITION FOR FAIR TRADE IN HARDWOOD PLYWOOD,**
*Defendant-Appellant*

---

2021-2281

---

Appeal from the United States Court of International Trade in No. 1:19-cv-00212-JAR, Senior Judge Jane A. Restani.

———————————

Decided:  June 15, 2022

———————————

JAMES P. DURLING, Curtis, Mallet-Prevost, Colt & Mosle LLP, Washington, DC, argued for plaintiffs-appellees Far East American, Inc., IKEA Supply AG, Linyi Glary Plywood Co., Ltd., Shandong Shelter Forest Products Co., Ltd., Shanghai Futuwood Trading Co., Ltd., Shelter Forest International Acquisition, Inc., Xuzhou Shelter Import & Export Co., Ltd.  Shandong Shelter Forest Products Co., Ltd., Shelter Forest International Acquisition, Inc., and Xuzhou Shelter Import & Export Co., Ltd. also represented by JAMES BEATY, DANIEL L. PORTER.

BRYAN PATRICK CENKO, Mowry & Grimson, PLLC, Washington, DC, argued for plaintiffs-appellees Patriot Timber Products, Inc., Taraca Pacific, Inc.  Also represented by JILL CRAMER, JEFFREY S. GRIMSON, WENHUI JI, YIXIN LI, KRISTIN HEIM MOWRY, SARAH WYSS.

PATRICK D. GILL, Sandler Travis & Rosenberg, P.A., New York, NY, for plaintiff-appellee IKEA Supply AG. Also represented by KRISTEN SUZANNE SMITH, Washington, DC.

GREGORY S. MENEGAZ, DeKieffer & Horgan, PLLC, Washington, DC, for plaintiffs-appellees Far East American, Inc., Linyi Glary Plywood Co., Ltd., Shanghai Futuwood Trading Co., Ltd.  Also represented by JAMES KEVIN HORGAN, ALEXANDRA H. SALZMAN.

MAUREEN E. THORSON, Wiley Rein LLP, Washington, DC, argued for defendant-appellant.  Also represented by

TIMOTHY C. BRIGHTBILL, TESSA V. CAPELOTO, ELIZABETH S. LEE, STEPHANIE MANAKER BELL, JOHN ALLEN RIGGINS.

---

Before TARANTO, CLEVENGER, and CHEN, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

Appellant Coalition for Fair Trade in Hardwood Plywood (the "Coalition") appeals the final decision of the United States Court of International Trade ("CIT") affirming the May 10, 2021 remand determination of the United States Department of Commerce ("Commerce"). *See Shelter Forest Int'l Acquisition, Inc. v. United States*, No. 19-00212, 2021 WL 3082407, at *7 (Ct. Int'l Trade July 21, 2021) ("*Shelter Forest II*"). In its remand determination, Commerce found that certain hardwood plywood merchandise ("inquiry merchandise"[1]) was commercially available prior to December 8, 2016 and therefore did not constitute later-developed merchandise that circumvented Commerce's January 2018 antidumping and countervailing duty orders on certain hardwood plywood products from China ("Orders"). *See id.* at *3. This outcome differed from that of

---

[1] "Inquiry merchandise" is defined as certain plywood (1) "with face and back veneers made of radiata and/or agathis pine," that (2) "[h]as a Toxic Substances Control Act (TSCA) or California Air Resources Board (CARB) label certifying that it is compliant with TSCA/CARB requirements," and (3) "is made with a resin, the majority of which is comprised of one or more of the following three product types—urea formaldehyde, polyvinyl acetate, and/or soy." *Shelter Forest II*, 2021 WL 3082407, at *2. The resin is used to glue, or otherwise bond, the veneers to the core of the plywood. *See id.* at *1. The parties used the term "resin" and "glue" interchangeably in their briefing, as well as in the proceedings below, and we do the same in this opinion.

Commerce's original November 2019 determination, in which it found that the inquiry merchandise was ***not*** commercially available prior to December 8, 2016 and therefore did constitute later-developed merchandise circumventing the Orders. *See Shelter Forest Int'l Acquisition, Inc. v. United States*, 497 F. Supp. 3d 1388, 1392 (Ct. Int'l Trade 2021) ("*Shelter Forest I*"). Commerce's change in position arose from the CIT's decision in *Shelter Forest I*, which (among other things) required Commerce to consider information that it had previously declined to review. *See Shelter Forest II*, 2021 WL 3082407, at *2–3. Based on that information, as well as additional information solicited during the remand proceeding, Commerce reached its negative anticircumvention determination. *Id.* The CIT sustained this determination in *Shelter Forest II*, finding that it was supported by substantial evidence and in accordance with the law. *Id.* at *3. For the reasons stated below, we *affirm*.

BACKGROUND

I

Commerce initiated the underlying antidumping and countervailing duty investigations on December 8, 2016. Following issuance of the Orders in January 2018, the Coalition requested, and Commerce initiated, an anticircumvention inquiry to determine whether the inquiry merchandise sold by foreign exporters constituted later-developed merchandise that circumvented the Orders. 19 U.S.C. § 1677j(d); 19 C.F.R. § 351.225(i); *Shelter Forest II*, 2021 WL 3082407, at *2.

As part of the anticircumvention inquiry, Commerce identified 43 Chinese exporters of inquiry merchandise. *Shelter Forest I*, 497 F. Supp. 3d at 1394. In November 2018, it limited individual examination to the three Chinese exporters of inquiry merchandise who accounted for the largest exports by volume. *Id.* Commerce did not select appellees Shelter Forest International Acquisition Inc. *et*

*al.* ("Shelter Forest") as one of the mandatory respondents. *Id.* Shelter Forest, however, had previously participated in the proceeding, first through its July 16, 2018 comment in opposition to the Coalition's request for an anticircumvention inquiry ("July 16, 2018 Opposition") and its October 11, 2018 response to Commerce's quantity and valuation questionnaire ("October 11, 2018 Q&V Response"). *See id.* at 1393 & n.5; *see also* Joint Appendix ("J.A.") 865–1545; J.A. 1888–3468.

On November 9, 2018, Commerce issued an identical initial inquiry questionnaire to each of the three mandatory respondents. *Shelter Forest I*, 497 F. Supp. 3d at 1394. In its initial questionnaire, Commerce requested that the mandatory respondents provide a description of "the precise resin composition of the resin used in the production of inquiry merchandise" and an explanation of how that resin composition was developed. J.A. 3497; J.A. 3544; J.A. 3591. Each mandatory respondent provided a high-level summary of the composition of its resin, but none of the responses included a percentage breakdown of the resin components or any citation or reference to supporting documentation. J.A. 3639; J.A. 3800; J.A. 4042. No other party submitted a response to the initial questionnaire. *See Shelter Forest I*, 497 F. Supp. 3d at 1394, 1401.

Commerce then issued separate supplemental questionnaires to the three mandatory respondents on December 19, 2018. Commerce specifically directed two of the mandatory respondents to "identify the percentage of each component listed used to formulate the glue" and provide supporting documentation. J.A. 4236; J.A. 4245–46. In their respective February 12, 2019 responses, the two mandatory respondents provided the percentage breakdown of the resin components, but their supporting documentation only identified their respective resins as being a urea-formaldehyde glue and did not mention any of the other components, let alone the specific percentages of each. *See* J.A. 4271, 4355–62; J.A. 4005–16; J.A. 4457–58.

Even though it was not selected as a mandatory respondent, Shelter Forest voluntarily elected to respond to some of the questions raised in Commerce's supplemental questionnaires ("February 12, 2019 Partial Response").[2] *Shelter Forest I*, 497 F. Supp. 3d at 1394. In its February 12, 2019 Partial Response, Shelter Forest acknowledged that Commerce requested from two of the mandatory respondents "additional explanation on the composition of the resin used" in the inquiry merchandise. J.A. 4610. Shelter Forest did not submit new materials, but instead directed Commerce to materials, including employee declarations, it had previously submitted regarding the composition of its eZero (also referred to as "E0") glue and the use of eZero glue in the inquiry merchandise. *See* J.A. 4602–04, 4606, 4609–11; *see also, e.g.*, J.A. 895–908, 925–26, 938–39, 941, 1484 (materials submitted in Shelter Forest's July 16, 2018 Opposition); J.A. 1898–99, 1903–904, 1906–13, 1915–16 (materials submitted in Shelter Forest's October 11, 2018 Q&V Response). Those materials, according to Shelter Forest, demonstrated that the radiata pine, CARB-certified plywood merchandise sold by Shelter Forest prior to December 8, 2016 "was made with a resin the majority of which was urea formaldehyde." J.A. 4610.

On June 4, 2019, Commerce notified the parties of its preliminary finding that the inquiry merchandise constitutes later-developed merchandise circumventing the Orders. *Shelter Forest I*, 497 F. Supp. 3d at 1394. Relevant to this appeal, Commerce noted that it was unable to determine that the radiata pine, CARB-certified plywood merchandise sold by Shelter Forest prior to December 8, 2016

---

[2]    As Shelter Forest did not respond to the initial questionnaire, the February 12, 2019 Partial Response was Shelter Forest's first questionnaire response after Commerce identified the mandatory respondents in November 2018. *See Shelter Forest I*, 497 F. Supp. 3d at 1394.

used a majority urea-formaldehyde resin, as Shelter Forest claimed. *See* Preliminary Decision Memorandum, Anti-Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Case Nos. A-570-051, C-570-052 (Dep't Commerce June 4, 2019) ("PDM"), at 16–17. Specifically, Commerce asserted, "Shelter Forest did not provide any documentation to support its assertion that 'eZero . . . is a glue made from a urea formaldehyde base.'" *Id.* at 17. Commerce had not requested additional documentation from Shelter Forest, let alone notified Shelter Forest of any deficiency in its submissions, prior to issuing the PDM.

On July 3, 2019, in response to Commerce's preliminary determination, Shelter Forest submitted additional information regarding the composition of its resin. *Shelter Forest I*, 497 F. Supp. 3d at 1394–95; *see also* J.A. 5718–817. Commerce rejected this submission as untimely new factual information, but invited Shelter Forest to formally "request Commerce solicit such information in accordance with 19 CFR 351.301(a)" by July 16, 2019. J.A. 4926. Shelter Forest made that request within the stated deadline, but Commerce nonetheless declined it. *Shelter Forest I*, 497 F. Supp. 3d at 1395; *see also* J.A. 4929–33; J.A. 4935–37. After receiving case briefs and rebuttal briefs from the parties, Commerce then issued its final affirmative determination on November 22, 2019 confirming its preliminary finding. *Shelter Forest I*, 497 F. Supp. 3d at 1395. In the accompanying Issues and Decisions Memorandum, Commerce concluded that Shelter Forest's glue did not meet the third criteria for inquiry merchandise because the employee declarations described the glue as being made from an "urea formaldehyde base" instead of a "majority" of urea formaldehyde. Issues and Decision Memorandum for the Final Determination, Anti-Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of

China, Case Nos. A-570-051, C-570-052 (Dep't Commerce Nov. 22, 2019) ("IDM"), at 24. Commerce also faulted Shelter Forest for not "identify[ing] the exact composition of its E0 glue," *id.*, even though Commerce had never requested such information from Shelter Forest and refused to accept that information when Shelter Forest attempted to provide it. *See* J.A. 4935–37.

## II

Shelter Forest, Shanghai Futuwood Trading Co., Ltd. ("Futuwood"), IKEA Supply AG. *et al.* ("IKEA"), and Taraca Pacific Inc. *et al.* ("Taraca Pacific") subsequently filed suit in the CIT challenging Commerce's final determination. *Shelter Forest I*, 497 F. Supp. 3d at 1392, 1395. Relevant to this appeal, the CIT concluded that substantial evidence did not support Commerce's determination that no respondent met the glue criteria for inquiry merchandise, given the declarations Shelter Forest submitted as well as Commerce's failure to seek or review supplemental information from Shelter Forest. *Id.* at 1397–98. The CIT additionally concluded that "Commerce abused its discretion by rejecting Shelter Forest's submission as untimely when it had not provided notice to Shelter Forest regarding any deficiencies [in Shelter Forest's previous submissions], as required by 19 U.S.C. § 1677m(d)."[3] *Id.* at 1400. Any

---

[3]   The statute states, in relevant part: "If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle." 19 U.S.C. § 1677m(d).

tardiness on the part of Shelter Forest, the CIT explained, "resulted from Commerce's failure to notify Shelter Forest of any deficiencies in its submissions until Commerce released its [PDM]." *Id.* at 1401. Accordingly, the CIT ordered Commerce to consider on remand Shelter Forest's July 3, 2019 submission and, as prescribed by 19 U.S.C. § 1677m(d), to notify Shelter Forest of any deficiencies and provide it with an opportunity to correct or explain such deficiencies. *Id.* at 1402.

## III

On remand, Commerce concluded that Shelter Forest's inquiry merchandise did not constitute later-developed merchandise that circumvented the Orders. *Shelter Forest II*, 2021 WL 3082407, at *3; *see also* Final Results of Redetermination Pursuant to Court Remand, Anti-Circumvention Inquiry on the Antidumping and Countervailing Duty Orders on Certain Hardwood Plywood Products from the People's Republic of China, Case Nos. A-570-051, C-570-052 (Dep't Commerce May 10, 2021) ("Final Remand Determination") at 9–10, 23, 31. Commerce reached this determination after reviewing Shelter Forest's July 3, 2019 submission and additional materials it solicited from Shelter Forest via a supplemental questionnaire. *See Shelter Forest II*, 2021 WL 3082407, at *3–4. In total, these materials included details regarding the composition of Shelter Forest's eZero glue and the later addition of melamine for purposes of waterproofing, as well as relevant production and sales documentation linking the use of the melamine-fortified eZero glue to the radiata pine, CARB-certified plywood Shelter Forest sold prior to December 8, 2016. *Id.* at *3–4; *see also* Final Remand Determination at 11–14, 25–26. Commerce also engaged extensively with the criticisms raised by the Coalition regarding the sufficiency of and alleged inconsistencies in Shelter Forest's documentation. Final Remand Determination at 20–30. None of

Commerce's factual findings or subsequent negative remand determination were made under protest.[4]

## IV

The Coalition then filed suit before the CIT, arguing that Commerce's remand determination is unsupported by substantial evidence. *Shelter Forest II*, 2021 WL 3082407, at *3. The Coalition further argued that Commerce's remand determination is not in accordance with the law, given that it found Shelter Forest's merchandise to be commercially available prior to December 8, 2016 despite Shelter Forest's position that the melamine fortification of its eZero glue was a trade secret at the time. *Id.*

The CIT disagreed, finding that the evidence supported both Commerce's conclusion that Shelter Forest's merchandise met the resin requirement for inquiry merchandise and Commerce's reliance on Shelter Forest's explanation as to why the eZero glue recipe did not include melamine as an ingredient. *Id.* at *4–5. The CIT further determined that Commerce appropriately used production and sales documentation to link use of the eZero glue to specific radiata pine, CARB-certified plywood sales made prior to December 8, 2016. *Id.* at *5. Like Commerce, the CIT rejected the Coalition's criticisms regarding the alleged inconsistencies in Shelter Forest's documentation,

---

[4]    Generally speaking, Commerce will reach a remand determination under protest "where the CIT remands with instructions that dictate a certain outcome that is contrary to how Commerce would otherwise find." *Meridian Prods. v. United States*, 890 F.3d 1272, 1276 n.3 (Fed. Cir. 2018); *see also Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376–77 (Fed. Cir. 2003) (explaining that Commerce may "adopt[ ] under protest a contrary position forced upon it by the [CIT]" and subsequently appeal that position to this court).

noting that those criticisms "do not undermine the reasonableness of Commerce's factual findings, which are supported by ample evidence on the record." *Id.* at \*6. Finally, the CIT held that Commerce's determination was in accordance with the law, as "[n]othing of record indicates that melamine is essential to the pertinent inquiry" and thus melamine's "addition in the production process is not required to be public knowledge for the merchandise to be found to be commercially available." *Id.* at \*7.

The Coalition appeals,[5] arguing that Commerce properly exercised its discretion in rejecting Shelter Forest's July 3, 2019 submission as untimely and did not violate its duty under 19 U.S.C. § 1677m(d). *See* Appellant's Br. at 13–14, 22–23. The Coalition further argues that Commerce's remand determination is "inadequately explained, unsupported by substantial record evidence, and otherwise unreasonable." *Id.* at 26. We have jurisdiction over the CIT's final decision in this case pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

We review Commerce's determinations using the same standard of review as the CIT, meaning we uphold those determinations if they are supported by substantial evidence and otherwise in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i); *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (citing *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1373 (Fed. Cir. 2015)). "Substantial evidence is defined as 'more than a mere scintilla,' as well as evidence that a 'reasonable mind might accept as adequate to support a conclusion.'" *Downhole Pipe*, 776 F.3d at 1374 (quoting *Consol. Edison*

---

[5]    The government did not participate in this appeal. *See* Letter from United States re: Non-Participation in Appeal, Docket No. 2.

*Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing for substantial evidence, "[w]e look to 'the record as a whole, including evidence that supports as well as evidence that fairly detracts from the substantiality of the evidence.'" *SolarWorld*, 910 F.3d at 1222 (quoting *Zhejiang DunAn Hetian Metal Co. v. United States*, 652 F.3d 1333, 1340 (Fed. Cir. 2011)). "Although we review the CIT's decision de novo, 'we give great weight' to the CIT's 'informed opinion,' which 'is nearly always the starting point of our analysis.'" *Canadian Solar, Inc. v. United States*, 23 F.4th 1372, 1378 (Fed. Cir. 2022) (quoting *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1341 (Fed. Cir. 2016)).

I

We conclude that Commerce abused its discretion in the original proceeding by failing, as required by 19 U.S.C. § 1677m(d), to notify Shelter Forest of any deficiency in its February 12, 2019 Partial Response and to provide Shelter Forest with an opportunity to remedy or explain such deficiency.

There does not appear to be any dispute that the statutory notice requirement applies equally to both mandatory and voluntary respondents. The text of § 1677m as a whole supports this reading. *Compare* 19 U.S.C. § 1677m(a) (discussing treatment of voluntary responses from exporters or producers not initially selected for individual examination in proceedings where Commerce has limited the number of exporters and producers to be examined), *with id.* § 1677m(d) (referring generally to "response[s] to a request for information" without distinguishing between mandatory and voluntary responses). Indeed, the Coalition acknowledged during oral argument that its position "has never been that [section] 1677m(d) can't apply to a voluntary respondent." *See* Oral Argument at 8:51–58; *see also id.* at 9:30–42 (noting belief that a voluntary respondent is generally "grandfathered

in[to section] 1677m(d)" by responding to questionnaires from Commerce "as they come along").

The Coalition's contention that § 1677m(d) does not apply to Commerce in this case is premised on the actions Shelter Forest took (or failed to take) in responding to the supplemental questionnaires.[6] Specifically, the Coalition argues, Shelter Forest intentionally did not provide the information and materials Commerce had requested and instead referred Commerce back to its earlier, allegedly deficient filings. *See* Appellant's Br. at 18–22. This behavior, in the Coalition's view, brings this case within the purview of *Papierfabrik August Koelher SE v. United States*, in which we held that § 1677m(d) does not obligate Commerce "to treat intentionally incomplete data as a 'deficiency' and then to give a party that has intentionally submitted incomplete data an opportunity to 'remedy' as well as to 'explain'" that deficiency. 843 F.3d 1373, 1383–84 (Fed. Cir. 2016).

---

[6] We decline to address the Coalition's argument that Shelter Forest forewent its rights under § 1677m(d) by responding only at the supplemental questionnaire stage. This argument, which was only briefly alluded to in the Coalition's reply brief, *see* Appellant's Reply Br. at 15, was presented in full for the first time at oral argument and comes too late. *See Henry v. Dep't of Justice*, 157 F.3d 863, 865 (Fed. Cir. 1998) (declining to consider argument raised for the first time at oral argument); *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (holding arguments insufficiently developed in briefing are forfeited); *see also* Oral Argument at 11:56–13:54. For similar reasons, we decline to address the Coalition's underdeveloped argument that Shelter Forest forewent its rights under § 1677m(d) by failing to request voluntary respondent status under 19 C.F.R. § 351.204(d)(4). *See* Appellant's Reply Br. at 7, 11 n.3.

This case, however, is not analogous to *Papierfabrik*. The "intentionally incomplete data" language from that case stems from the fact that the respondent there submitted fraudulent sales data to Commerce. *Id.* at 1383. The fraudulent nature of the respondent's previous submission formed the underlying rationale for our decision that § 1677m(d) did not apply, as that statutory provision "is readily understood not to apply to the situation [t]here, where [the respondent] ***was already aware of and caused*** the 'so-called deficiency.'" *Id.* at 1384 (emphasis added). Here, on the other hand, the Coalition does not allege that Shelter Forest submitted fraudulent information to Commerce.

The Coalition instead argues that Commerce had no duty under § 1677m(d) in this case because Shelter Forest, through counsel, had access to the information and materials contained in the exchanges between Commerce and the three mandatory respondents. Appellant's Br. at 20–21. With those exchanges accessible, the Coalition contends Shelter Forest knew or should have known (1) that its previous submissions were deficient with respect to the glue criteria, and (2) the level of detail required to overcome that deficiency. *Id.* at 21–22. As such, in the Coalition's view, there was no need for Commerce to identify any deficiency in Shelter Forest's previous submissions or to provide Shelter Forest with an opportunity to remedy or explain such deficiency. *Id.* But the Coalition cites no authority supporting its position that Commerce is relieved of its statutory duty by a voluntary respondent's ability to puzzle out from the docket what information is deficient and what information would be sufficient.

Even if the Coalition's argument had merit, the particular facts of this case undermine it. First, based on the record before us, Shelter Forest had provided by the initial questionnaire stage more information and supporting documentation regarding the composition of its resin than the mandatory respondents. *Compare* J.A. 3639; J.A. 3800;

J.A. 4042 (providing high-level summary of the mandatory respondents' respective resin compositions, with no citation or reference to supporting documentation), *and* J.A. 4005–16 (CARB compliance certifications from one of the mandatory respondents for merchandise using urea formaldehyde glue), *with, e.g.*, J.A. 895, 901–905; J.A. 1907–1910 (Shelter Forest employee declarations), *and* J.A. 925–26, 938–39, 941, 1484; J.A. 1915–16 (supporting documentation), *and* J.A. 1898–99, 1903–904 (October 11, 2018 Q&V Response). *See also* J.A. 4602–604, 4606, 4609–11 (directing Commerce to employee declarations and other materials previously submitted by Shelter Forest in July and October 2018). This undercuts the notion that Shelter Forest should have known that its own materials were deficient based on Commerce's reaction to what the mandatory respondents initially submitted. Second, Commerce did not appear to have a monolithic vision as to the type of information and materials needed to show the glue criteria was met, as evidenced by Commerce's decision not to request a percentage breakdown of the third mandatory respondent's resin composition. *Compare* J.A. 4250–52 (requesting third mandatory respondent explain how submitted documentation "demonstrates that the merchandise sold meets the definition of inquiry merchandise"), *with* J.A. 4236; J.A. 4245–46 (requesting other mandatory respondents "identify the percentage of each component listed used to formulate the glue" and provide supporting documentation). This undercuts the notion that Shelter Forest should have known how to remedy any deficiency in its own submissions based on Commerce's supplemental requests to the mandatory respondents. Finally, to the extent the Coalition's argument is one of harmless error, such argument fails: it is clear in this case that Commerce's decision not to abide by § 1677m(d) was not harmless.

For the reasons stated above, as the CIT properly concluded in *Shelter Forest I*, Commerce abused its discretion

in rejecting Shelter Forest's July 3, 2019 submission as untimely. *Shelter Forest I*, 497 F. Supp. 3d at 1400–401.

## II

We conclude that substantial evidence supports Commerce's negative determination and reject the Coalition's attempts to cast doubt on the agency's conclusions.

Commerce sufficiently and reasonably explained the bases for its negative remand determination. In particular, Commerce relied on the materials Shelter Forest submitted demonstrating (1) the composition of its eZero glue, which Shelter Forest explained was later fortified with melamine for purposes of waterproofing, and (2) the use of the melamine-fortified eZero glue in the radiata pine, CARB-certified plywood Shelter Forest marketed and sold prior to December 8, 2016. Final Remand Determination at 11–14, 25–26. Substantial evidence supports these findings.

For instance, the record contains documentation from Shelter Forest regarding certain shipments of radiata pine, CARB-certified plywood merchandise, including documentation indicating that this merchandise uses Shelter Forest's eZero urea-formaldehyde glue. *See, e.g.*, J.A. 895, 901–905; ; J.A. 925–26, 938–39, 941, 1484; J.A. 1898–99, 1903–904, 1907–1910; J.A. 1915–16; J.A. 5729–33; J.A. 5745–47, 5750; J.A. 5757–59, 5764. The record also includes documentation of the eZero glue formula, which confirms that the eZero glue is majority urea formaldehyde, J.A. 5738–39, as well as documentation explaining that melamine was added to the eZero glue for waterproofing purposes and that this addition occurs after the glue is already mixed, *see, e.g.*, J.A. 5877–80; J.A. 5892–93; J.A. 5902; J.A. 5933–35.

Commerce also adequately addressed the issues raised by the Coalition, which the Coalition repeats on appeal. *See* Final Remand Determination at 20–30. These arguments

are insufficient because, as both Commerce and the CIT explained, they do not undermine Commerce's factual findings or the evidence on which those findings rely, or because they are otherwise irrelevant to the ultimate question of whether Shelter Forest sold inquiry merchandise prior to December 8, 2016. *See Shelter Forest II*, 2021 WL 3082407, at *5–6; Final Remand Determination at 20–30.

For example, the Coalition points out that the eZero glue recipe does not refer to melamine. Appellant's Reply Br. at 22. The Coalition also alleges that Shelter Forest's documentation contains "inconsistent and contradictory information" regarding how much melamine was added to the eZero glue; whether melamine-fortified eZero glue is waterproof or not; and whether the waterproof plywood merchandise sold by Shelter Forest used eZero glue, which itself is not waterproof. Appellant's Br. at 27–29, 31; Appellant's Reply Br. at 21–22, 26, 28. But Commerce's definition of inquiry merchandise—the exact definition the Coalition proposed, *see Shelter Forest II*, 2021 WL 3082407, at *3 n.5—says nothing about the presence (or absence) of melamine in the resin, the degree to which the resin is waterproof, or the degree to which the merchandise itself is waterproof. Thus, the alleged discrepancies the Coalition identifies are irrelevant and do not detract from the substantial evidence supporting Commerce's negative determination. Even so, these alleged inconsistencies are resolved by Shelter Forest's explanation that melamine was added after the eZero glue is already mixed, *see, e.g.*, J.A. 5877–80; J.A. 5892–93; J.A. 5902; J.A. 5933–35, and by evidence in the record implying a direct relationship between the amount of melamine added and the degree to which the melamine-fortified glue (and thus the plywood merchandise) is waterproof, *see, e.g.*, J.A. 938; J.A. 1692; J.A. 1908; J.A. 1915; J.A. 5876–77; J.A. 5892; J.A. 5935.

For the reasons stated above, Commerce's determination that Shelter Forest sold inquiry merchandise prior to

18     SHELTER FOREST INTERNATIONAL ACQUISITION, INC. v. US

December 8, 2016 is both reasonable and supported by substantial evidence.

CONCLUSION

We have considered the Coalition's remaining arguments and do not find them persuasive. For the foregoing reasons, we affirm the CIT's final judgment.

**AFFIRMED**